# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

AMERICAN CONTRACTORS
INDEMNITY COMPANY,

Plaintiff,

v.

EMERALD ASSETS L.P.,

Defendant.

Case No. 2:15-cv-01334-APG-PAL

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND ATTORNEY'S FEES AND COSTS**

ECF No. 9

Plaintiff American Contractors Indemnity Company alleges that defendant Emerald Assets L.P. entered into an indemnity agreement (the "Indemnity Agreement") with ACIC, wherein Emerald agreed to hold ACIC "harmless from and against any and all demands, liabilities, losses, costs, damages, attorney's fees and expenses of whatever kind or nature. . . which arise by reason of, or in consequences of, the execution by [ACIC] of any Bond on behalf of the Principal." ECF No. 1 at 2-3.  ACIC alleges that in connection with the Indemnity Agreement, ACIC posted a performance bond (the "Bond") with Minden Gateway Center, LLC as principal.  It alleges that Minden failed to perform all required work and as a result, ACIC became subject to losses, costs, and expenses which ultimately exceeded the sum of the Bond and required ACIC to secure performance for completion of the work pursuant to the Bond. *Id.* at 3.

The complaint alleges that in December 2011, Emerald filed for Chapter 11 bankruptcy. *Id.*  Subsequently, a Reorganization Plan (the "Plan") was filed by Emerald and confirmed by the bankruptcy court. *Id.*  Pursuant to the Plan, Emerald promised to pay ACIC monthly payments on the Indemnity Agreement. *Id.* at 4.  ACIC alleges that the last payment it received pursuant to the Plan was in September 2014. *Id.*

ACIC filed suit on July 14, 2015, asserting claims against Emerald for breach of contract, equitable indemnity, and declaratory relief. *Id.*  Emerald was personally served on August 16,

1    2015. ECF No. 6.  However, Emerald has not appeared or otherwise responded to ACIC's

2    allegations.  The Clerk of Court entered default against Emerald on December 11, 2015. ECF No.

3    8.  ACIC now moves for a default judgment on the Bond amount, attorney's fees and costs, and

4    prejudgment interest.  I grant the motion in part.

5    **I.      LEGAL STANDARD**

6           Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step

7    process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  First, "[w]hen a party against

8    whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

9    failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P.

10   55(a).  Then, after the clerk enters default, a party must seek entry of default judgment under Rule

11   55(b).

12          Upon entry of default, I take as true the factual allegations in the non-defaulting party's

13   complaint, except those related to the amount of damages. Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys.,*

14   *Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quotation omitted).  Nonetheless,

15   "[e]ntry of default does not entitle the non-defaulting party to a default judgment as a matter of

16   right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation

17   omitted).  The "general rule [is] that default judgments are ordinarily disfavored.  Cases should be

18   decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472 (citing *Pena v.*

19   *Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  Whether a default judgment will

20   be granted is within the district court's discretion. *Id.*

21          I consider the following factors in determining whether to grant a default judgment: (1)

22   the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3)

23   the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of

24   a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7)

25   the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the

26   merits. *Id.* at 1471–72.

27

28

## II.      ANALYSIS

### 1.   Default Judgment on the Bond Amount

ACIC has satisfied the procedural requirements for default judgment.  Pursuant to Rule 55(a), the clerk properly entered a default against Emerald. ECF No. 8.  Because Emerald has neither answered nor otherwise responded to the complaint, the notice requirement of Rule 55(b)(2) is not implicated.  Thus, there is no procedural impediment to entering a default judgment.

Turning next to the *Eitel* factors, the first factor considers whether ACIC will suffer prejudice if a default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, No. 2:14-CV-00071-MMD-CWH, 2016 WL 3750651, at *3 (D. Nev. July 13, 2016).  In this case, the clerk entered default against Emerald for its failure to file a responsive pleading or answer the complaint and defend the lawsuit. ECF No. 8.  As a result, ACIC will suffer prejudice if default judgment is not entered as it will have no other means to litigate its claims. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 ("Potential prejudice to Plaintiffs favors granting a default judgment.  If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  Thus, this factor weighs in favor of an entry of default judgment.

The second and third *Eitel* factors favor a default judgment when the "plaintiff state[s] a claim on which the plaintiff may recover." *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *see also* Fed. R. Civ. P. 8.  ACIC's complaint is well pleaded in that it adequately states a breach of the terms of the Indemnity Agreement and the Plan.  A "plaintiff in a breach of contract claim must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006).  Here, ACIC has provided the Indemnity Agreement signed by Emerald on October 22, 2008, and the Reorganization Plan filed on November 21, 2012 and approved by the bankruptcy court on January 7, 2013. ECF Nos. 9-2; 9-4; 9-5.  It has also alleged that Emerald breached the Indemnity Agreement and Plan by failing to pay back the Bond amount through the

1   monthly payment schedule set forth in the Plan. ECF No. 1 at 4.  Finally, ACIC alleges that it has

2   suffered harm as a result of Emerald's failure to follow the terms of the Indemnity Agreement and

3   Reorganization Plan. *Id.*  Because ACIC has adequately pleaded its claims against Emerald, the

4   second and third *Eitel* factors weigh in favor of an entry of default judgment.

5          In assessing the fourth *Eitel* factor, I consider "the amount of money requested in relation

6   to the seriousness of the defendant's conduct, whether large sums of money are involved, and

7   whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'"

8   *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quoting

9   *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010));

10  *PepsiCo., Inc.*, 238 F. Supp. 2d at 1176.  ACIC seeks $218,308.20, the full amount of the Bond

11  that ACIC paid and that Emerald agreed to indemnify.  The Indemnity Agreement states that

12  Emerald would:

13          [I]ndemnify and hold [ACIC] harmless from and against any and all demands,
            liabilities, losses, costs, damages, attorneys' fees and expenses of whatever kind
14          or nature . . . which arise by reason of, or in consequences of, the execution by
            [ACIC] of any Bond on behalf of the Principal.
15

16  ECF No. 9-2 at 2.

17          Pursuant to the Reorganization Plan, related to this Indemnity Agreement Emerald agreed

18  to pay ACIC $1,000 a month for 60 months beginning on June 5, 2013.[1] ECF No. 9-4 at 20.

19  Beginning on the fifth anniversary of the effective date (month 61), the payment was to increase

20  to $2,500 a month until the debt was paid in full. *Id.*  ACIC has submitted evidence that Emerald

21  failed to pay this amount after June 2014. ECF No. 8 at 3.  Thus, Emerald appears to have made

22  payments to ACIC for only one year and thus has failed to comply with the terms of the Plan.

23          ACIC requests the full Bond amount of $218,308.20.  However, the Plan required

24  payment of $1,000 a month for the first 60 months, beginning June 2013.  Based on evidence

25  submitted by ACIC, Emerald stopped making its payments after 12 months, in June 2014. *See*

26  _____

27          [1] The Plan states that payment is to commence on "the first day of the month following the time
        the Debtor has leased 70% of its Waterfront Property or June 5, 2013, whichever first occurs." ECF No. 9-
28      4 at 20.

1   ECF No. 9-1 at 5.  Thus, Emerald appears to have paid $12,000 on the debt.  ACIC does not

2   explain why Emerald should not get credit for the payments it made prior to June 2014.

3   Therefore, I will deduct $12,000 from the Bond's full amount to account for the payments

4   Emerald has made.  After this $12,000 deduction, ACIC's damages appear to be reasonable and

5   proportionate to the harm suffered, and therefore the fourth *Eitel* factor weighs in favor of default

6   judgment.

7       The fifth *Eitel* factor weighs the possibility of a dispute regarding any material facts in the

8   case. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177.  "Upon entry of default, all well-pleaded facts in

9   the complaint are taken as true, except those relating to damages." *Id.* (citation omitted).  There is

10  little possibility of a dispute concerning material facts given both the well-pleaded complaint and

11  the evidence ACIC presented to support its allegations. *See Landstar Ranger, Inc. v. Parth Enter.,*

12  *Inc.*, 725 F. Supp. 2d 916, 921-22 (N.D. Cal. 2010) ("Since [plaintiff] has supported its claims

13  with ample evidence, and defendant has made no attempt to challenge the accuracy of the

14  allegations in the complaint, no factual disputes exist that preclude the entry of default

15  judgment.").  Additionally, given Emerald's failure to answer, no dispute has been raised

16  regarding material elements in the complaint.  Thus, the fifth *Eitel* factor weighs in favor of an

17  entry of default judgment.

18      The sixth *Eitel* factor considers whether the defendant's default is due to excusable

19  neglect. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177.  In the instant case, ACIC properly served

20  Emerald with the summons and the complaint on August 26, 2015 (ECF No. 6), but Emerald

21  failed to respond.  Subsequently, the Clerk of Court filed an entry of default on December 11,

22  2015, almost four months later.  There is no evidence before me that Emerald's failure to respond

23  is due to excusable neglect.[2] *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th

24  Cir. 1993) (per curiam) (holding that it was "perfectly appropriate" for the district court to enter

25

26      _____

        [2] The process server's affidavit states in the comments section that the resident was

27  "uncooperative" and that before the door was answered, the server "clearly heard a male's voice say 'I'm
    not here.'" ECF No. 6 at 2.  The female who answered the door also refused to give her name and stated

28  "he's not here" when she answered the door. *Id.*

1   default judgment against a corporation that failed to appear in the action).  Given the time period

2   during which Emerald had notice of the action against it and in which it failed to answer or

3   otherwise respond to the complaint, it is unlikely that it failed to respond due to excusable

4   neglect. *See Produce All., LLC v. Lombardo Imports, Inc.*, No. 2:12-CV-00433-MMD-CWH,

5   2013 WL 129428, at *4 (D. Nev. Jan. 9, 2013) (concluding that defendants' failure to respond

6   was likely not from excusable neglect where defendants received service nearly two months

7   before the clerk's entry of default).  Thus, the sixth *Eitel* factor weighs in favor of an entry of

8   default judgment.

9        Finally, the seventh *Eitel* factor takes into account the policy favoring a decision on the

10   merits.  "Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d

11   at 1472.  However, Emerald's failure to respond to the complaint "makes a decision on the merits

12   impractical, if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Thus, while this final

13   *Eitel* factor always weighs against an entry of default judgment, it does not preclude me from

14   entering a default judgment.  While a decision on the merits is desirable, Emerald has abandoned

15   its defense, failed to file a responsive pleading or answer the complaint, and failed to defend the

16   lawsuit.  Under these circumstances, default judgment in favor ACIC and against Emerald is

17   warranted.

18       **2.  Attorney's Fees and Costs**

19        ACIC also seeks $4,675 in attorney's fees and $455.66 in costs incurred in relation to the

20   Bond and enforcing ACIC's rights under the Indemnity Agreement and Plan.  The Indemnity

21   Agreement provides that Emerald agreed to indemnify and hold ACIC harmless from "all

22   demands, liabilities, losses, costs, damages, attorneys' fees and expenses . . . which arise by

23   reason of . . . the execution of [ACIC] on any Bond." ECF No. 9-2 at 2.  The Indemnity

24   Agreement states that such expenses include attorney's fees and costs. *Id.*  The Indemnity

25   Agreement also states that, "[i]n any claim or suit hereunder, an itemized statement of . . .

26   expenses paid and incurred, declared under penalty of perjury to be true and correct by an officer

27   of [ACIC], . . . shall be prima facie evidence of the fact and extent of the liability hereunder of

28

1    [Emerald]." *Id.* at 2-3.

2          Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v.*

3    *Eckerhart*, 461 U.S. 424, 433 (1983). *See also Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119

4    (9th Cir. 2000) (applying *Hensley*).   The court must first determine a reasonable fee by

5    multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly

6    rate." *Hensley*, 461 U.S. at 433.   Next, the court decides whether to adjust the lodestar calculation

7    based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67,

8    70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214

9    F.3d at 1119 (citation omitted).

10         The factors set forth in *Kerr* are:

11       (1) the time and labor required, (2) the novelty and difficulty of the questions
     involved, (3) the skill requisite to perform the legal service properly, (4) the

12   preclusion of other employment by the attorney due to acceptance of the case,
     (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time

13   limitations imposed by the client or the circumstances, (8) the amount involved
     and the results obtained, (9) the experience, reputation, and ability of the

14   attorneys, (10) the "undesirability" of the case, (11) the nature and length of the
     professional relationship with the client, and (12) awards in similar cases.

15

16   *Kerr*, 526 F.2d at 70.   Factors one through five are subsumed in the lodestar calculation. *See*

17   *Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996).   Additionally, the sixth

18   factor, whether the fee is fixed or contingent, may not be considered in the lodestar calculation.

19   *See Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other*

20   *grounds*, 984 F.2d 345 (9th Cir. 1993).   Once calculated, the lodestar is presumptively reasonable.

21   *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987).

22   Only in "rare and exceptional cases" should a court adjust the lodestar figure. *Van Gerwen v.*

23   *Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotations omitted). *See also*

24   *Fischer*, 214 F.3d at 1119 n. 4 (stating that the lodestar figure should only be adjusted in rare and

25   exceptional cases).

26         *i.*    *Reasonable Hourly Rate*

27         When determining the reasonableness of an hourly rate, I consider the experience, skill,

28

1    and reputation of the attorney requesting fees. *Webb v. Ada Cnty.*, 285 F.3d 829, 840 & n.6 (9th

2    Cir. 2002).  A reasonable hourly rate should reflect the prevailing market rates of attorneys

3    practicing in the forum community for "similar services by lawyers of reasonably comparable

4    skill, experience and reputation." *See id.*; *see also Blum v. Stenson*, 465 U.S. 886, 895-96 n.11

5    (1984).  To inform and assist me in exercising my discretion, "[t]he party seeking an award of

6    fees should submit evidence supporting the . . . rates claimed." *Hensley*, 461 U.S. at 433; *see also*

7    *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).  ACIC's attorneys seek, and

8    have submitted an affidavit to support, hourly rates of $250 for a partner and $125 for an

9    associate. ECF No. 9-8.  These rates are reasonable and within the prevailing rates for the Las

10   Vegas legal market. *See Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, No. 2:14-CV-00071-

11   MMD-CWH, 2016 WL 3750651, at *5 (D. Nev. July 13, 2016) (granting fees at $350/hour for a

12   partner and $255/hour for an associate); *Boliba v. Camping World, Inc.*, No. 2:14-CV-01840-

13   JAD-NJK, 2015 WL 5089808, at *4 (D. Nev. Aug. 27, 2015) (granting fees at $250/hour for a

14   partner, $200/hour for an associate, and $125/hour for a paralegal).

15              ii.     *Reasonable Hours Expended*

16          In addition to evidence supporting the rates claimed, "[t]he party seeking an award of fees

17   should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433.  "Where the

18   documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*

19   "The district court also should exclude from this initial fee calculation hours that were 'not

20   reasonably expended'." *Id.* at 433-34 (citation omitted).  "In other words, the court has discretion

21   to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the

22   case." *Edwards v. Nat'l Business Factors, Inc.*, 897 F. Supp. 458, 460 (D. Nev. 1995) (quotation

23   omitted).

24          Based on the affidavits and timesheets provided by ACIC, its attorneys spent 16 hours on

25   the case. ECF Nos. 9-7; 9-8.  This is a reasonable amount of hours in relation to a case of this

26   nature.  ACIC's request for attorney's fees is therefore granted in the amount of $4,675.

27   / / / /

28

1          *iii.     Costs*

2          ACIC seeks $455.66 in costs incurred for service of process expenses, filing fees, and

3   printing costs. ECF No. 9-8 at 6, 10.  However, only the printing costs of $7.40 are reimbursable

4   through a motion for attorney's fees and costs.

5          Rule 54(d) contains two separate provisions for costs.  To request taxable costs, the

6   prevailing party must file a bill of costs with the clerk. LR 54-1.  Taxable costs are taxed by the

7   clerk rather than the Court. Fed. R. Civ. P. 54(d)(1); LR 54-1.  The categories of taxable costs are

8   circumscribed by 28 U.S.C. § 1920. *See also* LR 54-1.  For example, filing fees and service of

9   process expenses are taxable costs. *See* 28 U.S.C. § 1920(1).

10         By contrast, nontaxable costs are recoverable on a motion to the Court, along with

11   attorney's fees Fed. R. Civ. P. 54(d)(2) ("claim for attorney's fees and related nontaxable

12   expenses"); *see also* LR 54-16(b)(2) (a motion for attorney's fees must include "[a]n itemization

13   of all costs sought to be charged as part of the fee award and not otherwise taxable pursuant to LR

14   54-1 through 54-15").  For example, copy, postage, travel, research, and Pacer expenses are

15   nontaxable costs.

16         Thus, ACIC's request for taxable costs such as filing fees and service of process expenses

17   are properly recovered through a bill of costs filed with the clerk, pursuant to Local Rule 54-1.

18   Therefore, only ACIC's copy costs are recoverable through this motion and I award nontaxable

19   costs in the amount of $7.40.

20         **3.  Prejudgment Interest**

21         ACIC has requested prejudgment interest of $3,051.83, for the period July 14, 2015 (the

22   date the complaint was filed) to December 18, 2015. ECF No. 9-1 at 6.  However, ACIC has not

23   given me any information about how this number was calculated, what rate was used, or why its

24   calculation is reasonable.  I therefore deny its motion with respect to this amount.

25   **III.     CONCLUSION**

26         IT IS THEREFORE ORDERED that plaintiff American Contractors Indemnity

27   Company's motion for default judgment **(ECF No. 9) is GRANTED in part**.  The clerk of the

28

1   court is directed to enter default judgment in favor of plaintiff American Contractors Indemnity

2   Company and against defendant Emerald Assets L.P. in the amount of $210,990.60 ($206,308.20

3   on the Bond, $4,675 in attorney's fees, and $7.40 in nontaxable costs).

4       DATED this 2nd day of September, 2016.

5

6                                                   _____
                                                    ANDREW P. GORDON
7                                                   UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28